UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RECEIVED
Filed

2014 OCT 20   PM 2: 12

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

----------------------------------------------------------------

HEARTLAND ENERGY GROUP, LTD.  a )
Seychelles Corporation )
                      )     CASE NO: 6:14-Cv-1702-ORL-40RS
      Plaintiff, )
                      )
v. )
                      )
FLUID ENERGY GROUP, LTD., a Canadian )
Corporation and FLUID LUX, S.A.R.L., a )
Luxembourg Limited Liability Company )
                      )
      Defendant. )
_____)

## PLAINTIFF'S VERIFIED MOTION FOR EXPEDITED HEARING AND PRELIMINARY INJUNCTION BARRING DEFENDANT FROM PURSUING CANADIAN PROCEEDING IN CONTRAVENTION OF ARBITRATION AGREEMENT

Plaintiff, HEARTLAND ENERGY GROUP, LTD. ("HEG") by and through its undersigned counsel, hereby files this Verified Motion for Expedited Hearing and Preliminary Injunction Barring Defendant from Pursuing Canadian Proceeding in Contravention of Arbitration Agreement against Defendants, FLUID ENERGY GROUP, LTD. ("FLUID ENERGY"), FLUID LUX S.A.R.L. ("FLUID LUX"), ( "Defendants").

This Motion is requesting expedited relief because, in contravention of its agreement to arbitrate, the Defendant FLUID ENERGY has filed a Complaint and Motion for Temporary Relief in Alberta, Canada concerning events arising out of the arbitrable agreements, all while an arbitration is currently pending in the International Court of Arbitration for the International

Chamber of Commerce (hereinafter referred to as the "ICC"), (the "ICC Proceeding").[1]   In support of the Motion, Plaintiff states as follows:

## BACKGROUND

1.      HEG was incorporated on June 21, 2012 for the purpose of manufacturing, distributing and licensing its ENVIRO-SYN® and Oil Safe Ar® products around the world.   HEG is the owner of the entire right, title and interest of United States Trademark Registration No. 4,224,628 on the Principal Register and Community Trademark Registration No. 012840691 for the mark ENVIRO-SYN® for "synthetic replacement for acids, namely, hydrochloric, phosphoric, hydrofluoric, sulfuric, acetic, and formic acids used in dissolving and removing mineral deposits" in Class 001.

2.      HEG is also the exclusive licensee to U.S. Patent No. 8,850,047 ("the '047 Patent") titled "Methods for using improved urea hydrochloride compositions;" U.S. Patent No. 8,430,971 ("the '971 Patent") titled "Composition for treatment of drilling fluid and associated methods;" and U.S. Patent No. 8,784,573 ("the '573 Patent") titled "Methods for using improved urea hydrochloride compositions".

3.      FLUID ENERGY and FLUID LUX were incorporated for the sole purpose of licensing and distributing HEG's ENVIRO-SYN® products in certain territories.   In fact, the day they opened their doors was the day that HEG shipped its first batch of product to Defendants.

4.      HEG and FLUID ENERGY were parties to a Manufacturing Agreement which was originally dated October 12, 2012 and then amended and restated on June 18, 2013 as well as two license agreements originally dated October 10, 2012 and then amended and restated on June 18, 2013. *See* Exhibits "A" – "C" respectively attached hereto and incorporated herein.

---

[1] ICC Case 20282/RD

5.     HEG and FLUID LUX were also parties to a similar manufacturing agreement dated October 10, 2012 and two license agreements originally dated October 10, 2012 and then amended and restated on June 18, 2013. *See* Exhibits "D" – "F" respectively attached hereto and incorporated herein.

6.     For ease of reference, the license and manufacturing agreements between HEG and FLUID ENERGY on the one hand and HEG and FLUID LUX on the other hand will be referred to as "the Agreements" throughout unless referencing a specific agreement.

7.     All of the Agreements contain an identical arbitration and governing law clause, namely:

> **"All disputes arising out of or in connection with this Agreement shall be finally settled under the Rules of Conciliation and Arbitration of the International Chamber of Commerce by three arbitrators appointed in accordance with said rules. Any arbitration administered by the UCC shall be held in the ICC's Florida, USA office, unless otherwise agreed to by the parties hereto. The award of the arbitrators shall be final and binding and may be confirmed and entered in any court, state or federal, having jurisdiction. The arbitration shall be conducted in the English language"**

and

> **"This Agreement shall for all purposes be governed by and construed with the laws of the State of Florida."**

*See* Exhibits "A" and "D" at ¶¶16.1 and 16.3; Exhibits "B" and "E" at ¶¶ 20 and 21; and Exhibits "C" and "F" at ¶¶ 20 and 21.

8.     Between December of 2012 and August 2013, HEG assisted FLUID with setting up its manufacturing facility which FLUID was to use in making the Licensed Product. *See* Complaint being filed in conjunction with this Motion at ¶¶ 21-25.

9.     Over the past year, Defendants have committed numerous violations of the Agreements which will be discussed in more detail herein.

10.     Based on their own conduct, Defendants have struggled to comply with the Agreements and have had issues with the product they manufacture due to changes they have made to the product against HEG's wishes and in violation of the Agreements.

11.     In filing the Request for Arbitration in the ICC Proceeding, Defendants claimed fraud as purportedly inducing them to enter into the Agreements. This was used, (1) as a way to attempt to argue that such Agreements were void *ab initio* and thus the two year non-compete clauses which prohibited them from continuing to make or sell the product in Canada were not binding on them so as to thereby be able to continue to sell product in Canada in competition with Plaintiff's licensed distributor Mud Master; (2) to attempt to avoid having to pay all outstanding royalties and debts owed to HEG under the Agreements; and (3) as a way to save face with their shareholders and investors. Attached as Exhibit "G" hereto is a true and correct copy of the Request for Arbitration which Defendants filed to initiate the ICC Proceeding.

12.     Specifically, the FLUID Defendants sent Plaintiff HEG a letter on April 11, 2014 alleging the Agreements were void based on an alleged fraud on the part of the Plaintiff which allegedly induced the Defendants to enter into the Agreements.  A true and correct copy of the letter is attached hereto as Exhibit "H."

13.     HEG, through the undersigned, responded to the letter refuting the allegations of fraud in the inducement and rebutting the violations referenced above.  A true and correct copy of the letter is attached hereto as Exhibit "I."

14.     Defendants are trying to pull the wool over the ICC's and the Canadian Court's eyes by falsely claiming fraud in the inducement because it is the only way Defendants can get out of the Agreements that they have repeatedly violated.

4

15.     After trying to resolve the serious breaches by Defendants to no avail, and after receiving a copy of the Request for Arbitration, on June 12, 2014, HEG, through the undersigned attorney, served a Notice of Termination on counsel for Defendants.  A true and correct copy of the Notice of Termination is attached hereto as Exhibit "J."

16.     As per paragraphs 4(c) and 4(d) of the License Agreements and paragraph 14.2(c) of the Manufacturing Agreements, the termination is effective 30 days from June 12, 2014 if Defendants failed to cure such breach.  Defendants failed to respond to the Termination Letter or cure any of the breaches addressed in the letter.

17.     As per paragraphs 4(b) and 22 of the License Agreements, any manufacture, sale or offer for sale of the Licensed Products after July 12, 2014 is not only considered patent infringement of certain of Plaintiff's issued U.S. patents covering its products, but, if in Canada, is further breach of the covenant not to compete, which includes a two year non-compete provision restraining further manufacture and sale.   To the extent that any sale or offer for sale in the US or European Union also includes the ENVIRO-SYN® mark it is also trademark infringement of Plaintiff's registered US and CTM trademarks.

18.     Based on the foregoing, Plaintiff responded to Defendants' Request for Arbitration and filed an Answer, Affirmative Defenses and Counterclaim, with counterclaims for Breach of Contract, Patent Infringement and Trademark Infringement.  A true and correct copy of the Answer, Affirmative Defenses and Counterclaim is attached hereto as Exhibit "K."

19.     As part of the proceeding in the ICC, the Parties are being required to pay $350,000 in fees to the ICC for administrative and arbitrators' fees.  Plaintiff, HEG, has already paid $172,000 to the ICC, and Defendants just paid their remaining amount due ($95,000).  Two

panelists have been selected and the third panelist will be selected by the other two arbitrators on or before October 20, 2014.

20.     On August 21, 2014 at 4:08 p.m., the undersigned received an email from counsel in Calgary, Alberta, Canada on behalf of FLUID ENERGY informing the undersigned that FLUID ENERGY had filed a Complaint and Ex Parte Injunction Application in Canada against Plaintiff and its Principals for Defamation, Inducing Breach of Contract and Intentional Interference with Economic Relations.  A true and correct copy of the email and attachments are attached hereto as Composite Exhibit "L."

21.     The undersigned was in mediation in another case and did not receive notice of the email until closer to 5:00 p.m.   As seen in the letter, a hearing was scheduled for the **following morning at 9:30 a.m.** *See* Exhibit "L."

22.     Undersigned contacted John MacDonald, the President of HEG and scrambled to find counsel in Canada who could appear for HEG at a hearing the following morning.

23.     That evening, HEG hired the law firm of Gowlings Lafleur Henderson, LLP in Alberta, Canada to represent HEG and its principals at the hearing.  The judge adjourned the motion to a later date, at which time the judge denied the Motion for Injunctive Relief, but permitted the Defendants to serve essentially a complaint in Canada ("the Canadian Proceeding") against the Plaintiff, and the officer/directors thereof, namely Stephen Rowley and John MacDonald.

24.     FLUID ENERGY's claims in the Canadian Proceeding arise out of and are "connected to" the Agreements such that they should be brought in the ICC, not in Canada.  Even though the claims include defamation and tortious interference based on letters which HEG's President sent to certain businesses within the oil and gas industry after the ICC Proceeding was initiated, such claims still arise out of the Agreements.  This is because the letters merely explained that due to

6

terminating the Agreements, FLUID was no longer a licensee of HEG's products, so the recipients of the letters, which included some of FLUID's Canadian customers, should be aware that future product purchased from FLUID is not the licensed product and would be in violation of Plaintiff's Patents in the U.S. and in violation of the two (2) year covenant not to compete..

25.     Only by construing the Agreements and determining whether they are in force and the effect of the non-compete clauses can any court determine whether or not the letters are defamatory. The validity and language in the Agreements is directly related to whether or not the statements in HEG's allegedly defamatory letters are false. In fact, under the heading "The statements in the Letters are false" in Fluid's Amended Statement of Claim in the Canadian Proceeding, FLUID alleges that "there is no binding agreement between Fluid and Defendants that precludes Fluid from marketing its products in the oil and gas industry for two years. Heartland induced Fluid to enter the Agreements based on the fraudulent misrepresentations of MacDonald and Rowley. As such, the Agreements are void *ub initio*." *See* Amended Statement of Claim at ¶ 20, which is attached hereto as Exhibit "M." In so stating, <u>FLUID is admitting that its defamation claims in the Canadian Proceeding are directly tied to the validity and enforcement of the Agreements</u>. The ICC Tribunal has already been tasked with these issues.

26.     In addition to defamation, the Statement of Claim filed in the Canadian Proceeding claims that HEG committed fraud and misrepresentations to induce FLUID into entering the Agreements. *See* Exhibit "M" at ¶¶ 7 and 8. These are the exact issues brought in the ICC Arbitration, as admitted in ¶ 9 of the Amended Statement of Claim in the Canadian Proceeding.

27.     HEG President John MacDonald signed an Affidavit in the Canadian Proceeding agreeing that he would not "communicate the following, or publish in any manner, to FLUID clients or prospective clients in Canada, to the effect of the following:

i.   That FLUID has infringed in Canada or is infringing patents licensed to HEG in Canada;

ii.  That FLUID has breached its Agreements with HEG;

iii. That purchasing or using FLUID's products in Canada constitutes an infringement of HEG's patents; and/or

iv.  That FLUID has committed securities and/or investment fraud."

A true and correct copy of the Affidavit is attached hereto as Exhibit "N."

28.   Canadian counsel has been instructed to and will be filing a Motion to Stay the Canadian Proceeding based on the fact that each of the claims brought by FLUID ENERGY arise out of the Agreements between the parties and thus should be a part of the ICC Proceeding. More importantly, in order for the Judge in Alberta to decide whether defamation, tortious interference and inducement to breach the contract occurred, the Judge must decide whether the Agreements are void as alleged by FLUID ENERGY or are valid, as alleged by HEG. This is something that will be decided by the ICC Tribunal and should not be decided in two separate courts.

29.   Heightening the need for the relief requested herein, Plaintiff was recently notified of a Motion for Contempt that FLUID ENERGY intends to file in the Canadian Proceeding wherein FLUID ENERGY is falsely alleging that Mr. MacDonald violated his undertaking given in the above-quoted Affidavit.

30.   Specifically, on October 3, 2014, undersigned received a letter from FLUID's Canadian attorneys stating that they were going to try and hold Mr. MacDonald in contempt of court in Canada based on an e-mail that he sent to a United States company concerning marketing efforts that FLUID initiated with a U.S. company.

31.   By way of background, FLUID officer, Clay Purdy has signed an affidavit in the Canadian Proceeding stating that FLUID does not sell the products at issue into the United States, which should be true because FLUID does not have rights to sell HEG's patented product

8

in the U.S. Mr. Purdy, however, perjured himself in his Affidavit with the Canadian Court as seen in Exhibits "O" - "Q" attached hereto.

32.    As seen in Exhibit O, Mr. Purdy had a telephone conversation with a Victoria Griffis from Brenntag, a U.S. company wherein he informed Ms. Griffis that the FLUID Defendants have 40-50 customers in the U.S. that FLUID currently sells its ENVIRO-SYN products to. *See* Exhibit "O."

33.    As seen in the U.S. Trademark Application, Serial No. 86375070 for FLUID ENERGY GROUP LTD., Defendants' first use in commerce date is March, 2014. *See* Exhibit "P."

34.    Also, Mr. Purdy is soliciting companies in the United States and doing so using Plaintiff's registered ENVIRO-SYN® trademark. *See* Exhibit "Q."

35.    Some of the companies, which are current HEG clients have been contacting HEG questioning the integrity of the products because of correspondence they have received from the FLUID Defendants.

36.    The email that Mr. MacDonald sent to the United States company, which forms the basis of FLUID's contempt Motion was prompted by a video teleconference that Mr. Purdy conducted with Calfrac in the United States. Since the October 3, 2014 letter further discussed settlement issues, undersigned has not attached it to this Motion; however, attached as Exhibit "R" to this Motion is the e-mail that Mr. MacDonald sent to the United States company and which was used as the basis for the contempt threat in the October 3, 2014 letter.

37.    The e-mail was sent to a U.S. company who was solicited by FLUID in the United States via a teleconference, which contradicts FLUID's own affidavits filed in the Canadian Proceeding that FLUID does not sell into the United States. *See* ¶ 12 of Mr. Purdy's Affidavit attached hereto as Exhibit "S."

9

38.    Mr. MacDonald e-mailed the company's (CalFrac) Woodlands, Texas office and simply recounted the events that took place at the trade show. Mr. MacDonald also stated that he heard that CalFrac was having trouble with some of the products that CalFrac was receiving from FLUID, and, to preserve HEG's reputation in the United States, Mr. MacDonald informed CalFrac that the product that the HEG might provide CalFrac in the United States would not be the product that was giving CalFrac mixed results.

39.    Mr. MacDonald's e-mail did not violate the terms of the affidavit described in Paragraph 27 above, yet, despite it clearly relating to the Agreements, he is being forced to deal with the issue in Canada given the Defendants' filing of the Canadian Proceeding.

40.    The ICC Arbitration currently pending between the parties is being conducted in Orlando, Florida by consent of the parties, and at the initiation of Defendants.

41.    The parties have spent a considerable amount of time and money to prepare the ICC Tribunal to resolve the disputes concerning the Agreements as well as to the Tribunal for the administrative and arbitrators' fees. *See* Financial Table attached hereto as Exhibit "T."

42.    Consequently, and pursuant to the clear, unambiguous and binding terms of the Agreements, the Defendants' filing in Canada constitutes a direct breach of the Agreements and the provisions that all disputes arising out of or in connection with the Agreements are to be held in the ICC.

43.    FLUID ENERGY's filing in Canada is a transparent attempt to inflict greater expense on Plaintiff and cause substantial harm to Plaintiff while avoiding having to prosecute its claims in the Arbitration, and in particular deal with the Counterclaim now brought by the Plaintiff in the ICC Arbitration.    If FLUID ENERGY is permitted to proceed with the Canadian Proceeding,

HEG will be significantly harmed and permanently and irreparably damaged, to say nothing of potential conflicting decisions of Canadian Courts and the ICC tribunal in Florida .

44.     As such, Plaintiff has filed this action requesting that the Court, *inter alia;* (a) enter an Order compelling the Defendants to submit the dispute which Defendants have filed in Canada to binding arbitration, as agreed upon in the Agreement, and (b) enjoin the Defendants from pursuing the Canadian Proceeding or any other proceeding.  HEG is now entitled to a preliminary injunction barring the Defendants from pursuing the Canadian Proceeding, or any such proceeding elsewhere than before the ICC tribunal in Florida.  Having initially agreed to the forum and manner for resolving disputes, namely via the ICC Arbitration, in Florida, the Defendants should not be permitted to try to shift the manner of resolving the dispute to Canadian Courts, and otherwise put the Plaintiff to further cost in litigating on "two fronts" and in a potentially longer manner, with the ICC proceeding potentially being resolved in twelve months, wherein the Canadian Proceeding may take significantly longer.

## MEMORANDUM OF LAW

### A. Entry of Preliminary Injunction is Necessary to Safeguard HEG's Arbitration Rights and is Proper and Warranted under the Circumstances

The entry of a preliminary injunction compelling the Defendants to immediately cease, desist and abandon the Canadian Proceeding, and barring any future such proceeding, is proper and warranted under the Federal Arbitration Act at 9 U.S.C. §206, stating "[a] court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States."  In effect, 9 U.S.C. § 206 creates a cause of action in federal court "to compel arbitration" in accordance with the terms of the subject arbitration agreement.  *Lindo v. NCL (Bahamas) Ltd.,* 652 F.3d 1257, 1262-63 (11th Cir. 2011).

11

Similarly, this Court, which has jurisdiction over this action under 9 U.S.C. § 203, is vested with the authority to issue injunctive relief attendant to its power to compel an arbitration. *See Borden, Inc. v. Meiji Milk Prods. Co.*, 919 F.2d 822, 826 (2d Cir. 1990) ("We hold that entertaining an application for a preliminary injunction in aid of arbitration is consistent with the court's powers pursuant to§ 206."), *cert. denied*, 500 U.S. 953 (1991); *accord Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 364-65 (5th Cir. 2003) ("'[F]ederal courts have the power to enjoin persons subject to their jurisdiction from prosecuting foreign suits.' Moreover, '[a]bsent the clearest command to the contrary from Congress, federal courts retain their equitable power to issue injunctions in suits over which they have jurisdiction.' Under the New York Convention and Chapter 2 of the Federal Arbitration Act (the Convention's implementing legislation) federal courts maintain jurisdiction to hear cases like this. [T]here is nothing in the Convention or implementing legislation that expressly limits the inherent authority of a federal court to grant injunctive relief with respect to a party over whom it has jurisdiction. Given the absence of an express provision, we discern no authority for holding that the New York Convention divests the district court of its inherent authority to issue an anti- suit injunction.'") (footnotes omitted). *See also APR Energy, LLC v. First Inv. Group Corp.*, 2014 U.S. Dist. LEXIS 137425 (M.D. Fla. Sept. 29, 2014).[2]

Moreover, HEG's right to arbitration before the ICC in Florida is beyond reasonable dispute. In fact, Defendants acknowledged this by initiating the pending ICC Arbitration by filing a Notice of Claim. *See* Exhibit "G." Nonetheless, they attempted to undercut that obligation just three months later by filing the Canadian Proceeding in Canada. The Court must enjoin that proceeding in aid of its authority to compel arbitration.

---

[2] The *APR Energy* case was recently decided in the Jacksonville Division of this District, and it is quite analogous factually. A copy of that case is attached hereto as Exhibit "U."

The Eleventh Circuit Court of Appeals has explained that "[i]n deciding a motion to compel arbitration under the Convention Act [9 U.S.C. § 201-208], a court conducts 'a very limited inquiry' [and a] district court must order arbitration unless the four jurisdictional prerequisites are not met or one of the Convention's affirmative defenses applies." *Bautista v. Star Cruises*, 396 F.3d 1289, 1294-1295 (11th Cir. 2005) (emphasis added) (citations and footnote omitted); *see also Lindo*, 652 F. 3d at 1275; *APR Energy* 2014 U.S. Dist. LEXIS 137425 at * 19-20. The four (4) jurisdictional prerequisites discussed by the Eleventh Circuit are the following: (a) there must be an agreement in writing within the meaning of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"); (b) the agreement provides for arbitration in the territory of a signatory of the New York Convention; (c) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (d) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states. *See Bautista*, 396 F.3d at 1294-1295 n.7.

All of the jurisdictional prerequisites required by the Eleventh Circuit are satisfied in the present action. First, the Agreement between the parties is a written agreement within the meaning of the New York Convention. For instance, pursuant to Article II(2) of the New York Convention, "[t]he term 'agreement in writing' shall include an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letter or telegrams." The arbitration clause contained in the Agreements (the "Arbitration Clauses") are within the scope of Article II(2) of the New York Convention because the Agreements are written arbitration agreements between the parties. *See Bautista*, 396 F.3d at 1300-01; Exhibits "A"-"F" and ¶ 10 above.

Second, the Arbitration Clauses provide for arbitration in the territory of a signatory of the New York Convention. Specifically, the Arbitration Clauses require the Arbitration to take place in

13

the United States, and more particularly, in the ICC's Florida USA offices. The United States has been a signatory to the New York Convention since September 30, 1970 when it ratified the Convention. *Id.* at 1296 (noting that the United States acceded to the Convention in 1970). Canada joined on August 10, 1986. *See* United Nations Foreign Arbitral Awards Convention Act, R.S.C. 1985, c. 16 (2nd Supp.).

Third, the Agreements arise out of a contractual relationship that is considered to be commercial in nature; namely, a contract between private parties for goods and services in exchange for payment. It is well-established that a "contract for services is commercial in nature." *Adler v. Fed. Republic of Nigeria*, 219 F.3d 869, 875 (9th Cir. 2000) ("A contract for services is plainly commercial in nature.").

Fourth, neither Defendant to the present action is an American citizen (both are foreign entities), and the commercial relationship between the parties relates to HEG's license of its patented-formulas to Defendants.

Consequently, the four (4) jurisdictional prerequisites are clearly satisfied in this case.

The Court must subsequently determine whether any of the New York Convention's affirmative defenses are applicable herein. Article II(3) of the New York Convention requires "that courts enforce an agreement to arbitrate unless the agreement 'is null and void, inoperative or incapable of being performed.'" *See* the New York Convention, art. II(3) (emphasis added). The Defendants cannot submit that any of the New York Convention's affirmative defenses apply. As noted, they already acknowledged that the parties' disputes must be resolved through arbitration by filing a Request for Arbitration back on May 28, 2014.

Accordingly, HEG is substantially likely to obtain an order compelling arbitration on the merits of this action. Nonetheless, such an order would be rendered meaningless if in the meantime

Defendants are allowed to proceed with the Canadian Proceeding and potentially receive a differing result. Such relief would clearly harm HEG and directly interfere with its ability to perform its manufacturing and licensing activities around the Globe. Thus, the consequences constitute an irreparable harm to HEG. An injunction will not prejudice the Defendants, as they will be able to pursue their arguments against HEG through the ICC arbitration which is already underway. The enforcement of an arbitration agreement is also in the public interest, and a remedy at law is unavailable to bar Defendants from proceeding otherwise.

**B.      Entry Of A Preliminary Injunction to Safeguard HEG's Arbitration Rights Is Proper and Warranted Under The Florida Arbitration Code.**

In addition, or as an alternative, to the New York Convention, injunctive relief is proper and warranted in accordance with the Florida Arbitration Code (Florida Statutes §§ 682.01- 682.22). Florida Statutes § 682.03(1) is applicable herein because the Arbitration Clauses are subject to the Code, and the Arbitration Clauses provide for arbitration in Florida. Pursuant to Florida Statutes § 682.03(1), "[a] party to an agreement or provision for arbitration subject to this law claiming the neglect or refusal of another party thereto to comply therewith may make application to the court for an order directing the parties to proceed with arbitration in accordance with the terms thereof." In accordance with the statutory language, when determining the suitability of an order compelling arbitration pursuant to Section 682.03(1), courts are restricted to consider the following three (3) factors: (1) whether a valid written agreement exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived. *See Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999)). All three (3) factors are met herein because the Arbitration Clauses constitute valid and enforceable agreements to arbitrate any and all disputes arising from or connected to the Agreements, and HEG has not waived its right to arbitrate under the Agreements.

15

First, the Arbitration Clauses constitute valid and enforceable arbitration agreements under Florida law. Indeed, the Florida Arbitration Code does not even require that an arbitration agreement be signed to be enforceable. *See H-Evergreen Woods, LLC v. Robinson*, 135 So. 3d 331 (Fla. 5th DCA 2013). Here, the Arbitration Clauses are valid and enforceable because they were agreed to and signed by all parties. Further, as noted above, the Defendants reaffirmed the validity and enforceability of the Clauses in their Request for Arbitration. As such, any claim by the Defendants as to the unenforceability of the Arbitration Clauses would be without merit.

Second, an arbitrable issue exists because there is an acknowledged dispute between the parties. In particular, the parties disagree as to whether the Agreements are void and whether Defendants committed numerous violations of the Agreements and are continuing to infringe on Plaintiff's trademarks and patents – all of which are directly related to Plaintiff's allegedly defamatory comments in the Canadian Proceeding. Pursuant to the Arbitration Clauses, such disagreements must be resolved by way of binding arbitration. This is especially true, when, as here, the arbitration provisions in the Agreements are so broad. In *AT&T Mobility LLC v. Crestpoint Solutions, Inc.*, the court stated that "If a contract's arbitration clause is broad, then the Court must find that the parties bargained to have any dispute that arguably falls within the scope of that clause settled through arbitration, absent compelling proof to the contrary." 2010 U.S. Dist. LEXIS 77271, *5 (N.D. Ga. July 30, 2010) (*citing Sheet Metal Workers Local 57 Welfare Fund v. Tampa Sheet Metal Co.*, 786 F.2d 1459, 1460 (11th Cir. 1986)). The Agreements at issue include an identical arbitration clause, which FLUID recognized in the Request for Arbitration. *See* Exhibit "G" at ¶¶ 2-4. The arbitration provision is broad, requiring arbitration of all disputes "arising out of or in connection with" the Agreements. *See* ¶ 10, above.

16

FLUID's claims in the Canadian Proceeding "arguably fall" within the scope of such a broad provision. Furthermore, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983). In the *AT&T Mobility* case, the arbitration provision was as follows: "if [Plaintiff] and [Defendant] do not reach agreement within 30 days of first receiving notice of dispute, instead of suing in court, [Plaintiff] and [Defendant] agree to arbitrate **any and all disputes and claims** (including but not limited to claims based on or arising from an alleged tort) **arising out of or relating to this agreement**, or to any prior agreement for Products and/or Services between [Defendant] and [Plaintiff]." 2010 U.S. Dist. LEXIS 77271, *5 (N.D. Ga. July 30, 2010) (emphasis added). The arbitration provisions in the Agreements at issue in the pending ICC Arbitration are equally broad.

Third, HEG has not waived its right to demand arbitration. A right to arbitration is waived when: (a) under the totality of the circumstances, the party has acted inconsistently with the arbitration right, and (b) that party has in some way prejudiced the other party. *Garcia v. Wachovia Corp.*, 699 F.3d 1273, 1277 (11th Cir. 2012). Here, there is no basis to find that HEG has waived its arbitration rights. HEG has filed an Answer, Affirmative Defenses and Counterclaim in the Arbitration Proceeding and intends to vehemently defend its rights in the proceeding. And, HEG is the party being prejudiced by FLUID's conduct.

Accordingly, as noted above, HEG likely to prevail on the merits of this action, and all other factors require injunctive relief to safeguard HEG's arbitration rights.

## C. Entry Of A Preliminary Injunction To Safeguard HEG's Arbitration Rights Is Proper and Warranted Under Anti-Suit Injunction Principles.

In addition to the foregoing arguments, injunctive relief is also proper under the anti-suit injunction principles applicable to this case. The purpose of anti-suit injunctions is not limited

to enjoining foreign actions in favor of domestic litigation. On the contrary, federal courts have frequently enjoined foreign actions in favor of domestic arbitrations pursuant to an agreement between the parties. *See Suchodolski Assoc., Inc. v. Cardell Fin. Corp.*, Nos. 03 Civ. 4148, 04 Civ. 5732, 2006 U.S. Dist. LEXIS 83169, *2-4 (S.D.N.Y. Nov. 16, 2006) (granting motion for anti-suit injunction in favor of arbitration against plaintiffs who had filed a parallel action in Brazil); *see also Paramedics Electromedicina Comercial, Ltda. v. GE Medical Systems Information Technologies, Inc.*, 369 F.3d 645, 653-55 (2d Cir. 2004) (affirming the district court's order issuing an anti-suit injunction in favor of arbitration against defendants who had filed a civil action in Brazil); *APR Energy*, 2014 U.S. Dist. LEXIS 137425 at * 29-55 (Middle District of Florida enjoining proceeding initiated in Libya in contravention of ICC arbitration clause). In this case, the Court should arrive at a similar result and issue an anti-suit injunction requiring the Defendants to immediately cease, desist and abandon the Canadian Proceeding because the parties have agreed that any and all disputes arising from the Agreements should be resolved by way of binding arbitration.

"The suitability of an anti-suit injunction involves different considerations from the suitability of other preliminary injunctions." *See APR Energy*, 2014 U.S. Dist. LEXIS 137425 at * 31 (*quoting E. & J Gallo Winery v. Andina Licores, SA.*, 446 F.3d 984, 990 (9th Cir. 2006). Instead, the Court need only address whether "the factors specific to an anti-suit injunction weigh in favor of granting the injunction." *Id.* at 990-91.

The issuance of an anti-suit injunction is proper when the following threshold factors are met: (a) the parties are the same in both the foreign and domestic lawsuits; and (b) resolution of the case before the enjoining court is dispositive of the action to be enjoined. *See APR Energy* 2014 U.S. Dist. LEXIS 137425 at * 30; *Canon Latin Am., Inc. v. Lantech (CR), SA.*, 508 F.3d

597, 601 (11th Cir. 2007); *accord S.E.C. v. Pension Fund of America, L.C.*, 613 F. Supp. 2d 1341, 1344 (S.D. Fla. 2009).  These threshold factors are met here because (a) the parties to this action, the Canadian Proceeding, and the ICC Arbitration, are primarily HEG and FLUID, and (b) resolution of the case before this Court, and ultimately the Arbitration, is dispositive of the action to be enjoined.  That is, the Arbitration between the parties will be dispositive of each and every dispute arising from the Agreement.

**(a)  The Parties Are The Same in Both Actions.**

The Court may note that the Canadian Proceeding also includes MUD MASTER DRILLING FLUID SERVICES as a Defendant.  *See* Exhibit "M."  However, Plaintiff believes that Mud Master, a Canadian company, was simply included as a way to further harass Plaintiff due to Plaintiff's business relationship with Mud Master.  As the Canadian Statement of Claim shows, Mud Master did little more than allegedly forward one of Mr. MacDonald's allegedly defamatory letters to a third party.  *See* Exhibit "M" at ¶ 15.  Mud Master is not a "primary party" in the Canadian Proceeding.  Similarly, Environmental Manufacturing Solutions LLC ("EMS") was included as a Defendant in the Canadian Proceeding, yet EMS has nothing to do with FLUID's claims in Canada, nor does EMS have anything to do with the Agreements. The complete lack of allegations concerning EMS in the Statement of Claim prove as much.  EMS is simply another company owned by the President of HEG, and FLUID included EMS in the Canadian Proceeding for no legitimate purpose.  Finally, HEG officers John MacDonald and Stephen Rowley were individually named in the Canadian Proceeding, and those individuals were also named in FLUID's ICC Request for Arbitration before being dismissed.  Now, FLUID officers Darren Thatcher and Clay Purdy are individually named in the ICC Arbitration Proceeding.

As explained in the *APR Energy* case, even when parties in the foreign action and arbitration are not literally identical, if the "primary parties" are the same, then this requirement is met. *See APR Energy* at * 32-42. In fact, in the *APR Energy* case, the Middle District noted that "if the identity of parties requirement were interpreted so narrowly, a litigant could easily preempt an anti-suit injunction by the addition of any nonessential party," which is precisely what FLUID has done with by adding the Mud Master defendant to the Canada case. *Id. (citing Maroc Fruit Bd. S.A. v. M V Almeda Star*, 961 F. Supp. 2d 362, 365 (D. Mass. 2013) (finding that the "parties at the crux of this dispute" were parties to both proceedings and that "[t]o allow [the defendant] to avoid an injunction simply by adding an extra party would undermine the flexible approach [to the threshold requirements] taken by the First Circuit")).

The parties to the present action, and ultimately to the Arbitration, are the same as the parties to the Libyan Proceeding; namely, HEG and the Defendants. Therefore, the first factor is fully satisfied in this case and needs no further consideration.

**(b) Resolution Of This Case Disposes Of The Canadian Proceeding.**

Resolution of the case before this Court, and ultimately before the ICC Arbitration, will be dispositive of all issues in the Canadian Proceeding. In particular, since the parties agreed to resolve their disputes through arbitration, the Canadian Proceeding is unauthorized and in breach of the Agreements. A finding in this regard will be a part of this action, as HEG is seeking a permanent injunction barring Defendants from pursuing the Canadian Proceeding and any such proceeding other than through the Arbitration. In other words, to the extent Defendants claim to be entitled to any relief from HEG (including the relief they seek in Canada), that relief must be obtained in the Arbitration.

In *Canon*, the Eleventh Circuit construed the "dispositive" prong to mean that resolution of the case in the enjoining court must "settle or finish the dispute." *See APR Energy*

2014 U.S. Dist. LEXIS 137425 at * 42 (*citing Canon*, 508 F.3d at 601 n.8). The Arbitration to be compelled in this action will "settle or finish the dispute" underlying the Canadian Proceeding because said dispute arises from the Agreements. and pursuant to the Arbitration Clauses, any and all disputes arising from the Agreement must be resolved by way of binding arbitration. Again, if Defendants claim that HEG's statements concerning the termination of the Agreements are defamatory, they must prove that in the Arbitration, just as HEG added its patent and trademark infringement claims to the same pending arbitration. As explained above, the Arbitration Clauses in the Agreements are very broad under Florida law. And, Florida law has the same substantive causes of action brought in the Canadian Proceeding and which may be included in the Arbitration, namely, defamation, tortious interference, and contractual issues such as inducement to enter and breach of contract.

Accordingly, resolution of this action is dispositive of the Canadian Proceeding.

**(c)      Additional Equitable Factors Bolster The Need For An Anti-Suit Injunction.**

Because HEG has overcome the threshold factors for the issuance of an anti-suit injunction, the Court must next analyze additional factors of equity and international comity to determine whether the issuance of an anti-suit injunction is proper.    Other courts have also considered factors as to judicial efficiency and economy, such as whether the foreign action is vexatious to the movant. *See Alstom Chile, SA. v. Mapfre Compania de Seguros Generales Chile SA.*, 2013 U.S. Dist. LEXIS 156294, *4 (S.D.N.Y. Oct. 31, 2013) (granting petition to compel arbitration and issuing anti-suit injunction in favor of arbitration against defendant who had filed a parallel civil action in Chile) (*citing China Trade & Dev. Corp. v. M V Choong Yong*, 837 F.2d 33, 35 (2d Cir. 1987)); *APR Energy*, 2014 U.S. Dist. LEXIS 137425 at * 30

21

(citing *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 654 (2d Cir. 2004).

Maintenance of the Canadian Proceeding is a direct and egregious threat to this Court's jurisdiction and United States public policy favoring arbitration.   To illustrate, in *Paramedics*, the court affirmed the district court's issuance of an anti-suit injunction in favor of arbitration because, *inter alia*, "the foreign proceeding threatens a strong public policy [and] the jurisdiction of the domestic forum." *Paramedics*, 369 F.3d at 654 (also noting that "[t]he federal policy favoring the liberal enforcement of arbitration clauses (as discussed above) applies with particular force in international disputes."). Similarly, in this case the issuance of an anti-suit injunction against the Defendants is proper and warranted to protect this Court's unquestionable jurisdiction as presented in the Arbitration Clauses and public policy favoring the enforcement of arbitration agreements.

In *Alstom*, the court observed that "requiring Plaintiffs to litigate the same issues simultaneously on two continents would, in light of the mandatory arbitration provision, be vexatious to Plaintiffs." *Alstom*, 2013 U.S. Dist. LEXIS 156294 at *4. (emphasis added).   In the same vein, forcing HEG to litigate issues concerning the validity, substance, and enforceability of the Agreements, while at the same time taking part in the mandatory Arbitration in Florida, would be – and is – vexatious to HEG.

Finally, although it is well-established that "international comity concerns must be weighed" before issuing an anti-suit injunction, "those concerns do not tip the scales against an injunction" when the parallel foreign "litigation is an example of interdictory litigation designed to interfere with the proceedings in this Court and to evade this Court's judgments." *Sec. Exch. Comm'n*, 613 F. Supp. 2d at 1346 (S.D. Fla. 2009).   In the present action, where it is mandatory

that the parties submit any and all disputes arising from the Agreement to binding arbitration, the Canadian Proceeding can have no other purpose but to interfere with the Arbitration and this Court's right to compel arbitration. The Canadian Proceeding is a transparent attempt to obtain a coercive measure intended to cause substantial harm to HEG. As such, concerns for international comity cannot prove dispositive when the Defendants are blatantly circumventing their obligation to submit their dispute against HEG to mandatory arbitration in Florida, in favor of an interdictory litigation in a more favorable home forum.

### D.    Notice to Defendants.

The requested preliminary injunction is available to HEG upon notice to Defendants. *See Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 569 F.2d 300, 302 (5th Cir. 1978) ("Rule 65(a) does not require service of process. The Rule does require notice to the adverse party"). Accordingly, notice to FLUID is being provided via the actions set forth in the Certificate of Service below, which is in Compliance with Paragraphs 12 and 18.3 of the Agreements. *See also APR Energy* Order on Hearing (Doc. 7), with discussion of service in identical situation.

### E.    No Injunction Bond Is Required.

The requested preliminary injunction does not require HEG's posting of a bond because Defendants cannot demonstrate any risk of monetary loss from an order that bars them from pursuing the Canadian Proceeding. *See Am. Civil Liberties Union of Fla., Inc. v. The Florida Bar*, 744 F. Supp. 1094, 1100 (N.D. Fla. 1990) ("Because defendants have not indicated a risk of monetary loss from the issuance of a preliminary injunction, no bond will be required under Rule 65 of the Federal Rules of Civil Procedure.").

WHEREFORE, the Plaintiff, HEARTLAND ENERGY GROUP, LTD, respectfully requests that this Court enter an Order barring the Defendants, FLUID ENERGY GROUP, LTD. and

FLUID LUX, S.A.R.L. from pursuing the Canadian Proceeding, or any such proceeding elsewhere, in accordance with the terms of the Agreements, pursuant to 9 U.S.C. § 206, Florida Statutes § 682.03, and anti-suit injunction principles, while also granting Plaintiff all other relief deemed just, proper, and equitable.

DATED this 20th day of October, 2014.

Respectfully submitted,

BEUSSE WOLTER SANKS & MAIRE, P.A.
390 North Orange Avenue, Suite 2500
Orlando, Florida 32801
Telephone:   (407)  926-7700
Facsimile:    (407)  926-7720
Email:  adavis@iplawfl.com
Email:  kwimberly@iplawfl.com
Attorneys for Respondents

By:   /s/ Amber N. Davis
      Amber N. Davis
      Florida Bar No.: 26628
      Kevin W. Wimberly
      Florida Bar No. 57977

## VERIFICATION

I, John MacDonald, President of Heartland Energy Group, Ltd, verify under penalty of perjury in accordance with 28 U.S.C. § 1746 that the facts provided in support of the foregoing Motion are true and correct based on my personal knowledge, as supported by Heartland Energy Group's records and the knowledge of Heartland Energy Group's personnel.

John MacDonald

10-20-2014
Date

24

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been mailed and emailed this 20th day of October, 2014 to Torys, LLP c/o David Wawro, Esq. (dwawro@torys.com) and Jaclyn Leader (jleader@torys.com) 1114 Avenue of the Americas, 23rd Floor, New York, NY 10036 the attorneys for Defendants in the ICC Proceedings as well as mailed and emailed to Burnet, Duckworth & Palmer LLP c/o Trevor McDonald (trm@bdplaw.com) the attorney representing Defendants in the Canadian Proceedings as well as mailed via certified air mail, with postage prepaid, return receipt requested to Defendants pursuant to the Notice Provisions of the Agreements at the following addresses:

Fluid Energy Group, Ltd.
#140,214 - 11th Avenue Calgary, Canada T2G 0X8

Fluid Lux S.a.r.l
#73, Cote d/Eich
L-1450 Luxembourg


/s/ Amber N. Davis
Attorney