# EXHIBIT "M"

AMENDED this _____19th_____ day of
_____Sept, 2014_____ Pursuant to
Rule _____3.62_____
dated the _19th_ day of _Sept, 2014_

~~CLERK OF THE COURT~~

**Form 10**
[Rule 3.25]

Clerk's Stamp:

CLERK OF THE COURT
FILED
**SEP 1 9 2014**
JUDICIAL CENTRE
OF CALGARY

| | |
|---|---|
| COURT FILE NUMBER | 1401-09170 |
| COURT | COURT OF QUEEN'S BENCH OF ALBERTA |
| JUDICIAL CENTRE | CALGARY |
| PLAINTIFF | FLUID ENERGY GROUP LTD. |
| DEFENDANTS | JOHN MACDONALD, STEPHEN ROWLEY, HEARTLAND ENERGY GROUP LTD., ENVIRONMENTAL MANUFACTURING SOLUTIONS LLC, and MUD MASTER DRILLING FLUID SERVICES LTD. |
| DOCUMENT | **AMENDED** STATEMENT OF CLAIM |
| ADDRESS FOR SERVICE AND CONTACT INFORMATION OF PARTY FILING THIS DOCUMENT | **Burnet, Duckworth & Palmer LLP**<br>2400, 525 – 8 Avenue SW<br>Calgary, Alberta  T2P 1G1<br>Lawyer:      James Swanson<br>Phone Number: (403) 260-5712<br>Fax Number:   (403) 260-0332<br>Email Address:  jswanson@bdplaw.com<br>File No.      72515.1 |

**NOTICE TO DEFENDANTS**

You are being sued.  You are a defendant.

Go to the end of this document to see what you can do and when you must do it.

**Note: State below only facts and not evidence (Rule 13.6)**

**Parties**

1.    Fluid Energy Group Ltd. (**Fluid**) is a corporation incorporated and doing business in the oil and gas industry in Alberta.  Fluid is a Calgary based company that manufactures environmentally responsible, biodegradable, and non-hazardous replacements for acids

2

and caustics in the oil and gas industry.  Fluid currently manufactures and sells Enviro-Syn HCR in Canada.

2.      Mud Master Drilling Fluid Services Ltd. (**Mud Master**), also operating as OptiFrac Chemical Services, is a corporation incorporated in Alberta and doing business in the oil and gas industry in Canada

3.      Heartland Energy Group Ltd. (**Heartland**) is a corporation incorporated in Seychelles and doing business in the oil and gas industry internationally.

4.      Environmental Manufacturing Solutions LLC (**EMS**) is a corporation incorporated in Florida and doing business in the oil and gas industry internationally.

5.      John MacDonald (**MacDonald**) is the Director of Heartland and Manager of EMS and resides in Florida.

6.      Stephen Rowley (**Rowley**) is the President of Heartland and resides in Grain Valley, Missouri.

**The Defendants' Frauds and Misrepresentations**

7.      On November 1, 2012, Fluid entered into a series of agreements with Heartland, which allowed Fluid to exclusively market two products, Oil Safe AR and Mud Safe CR in various global markets, including Alberta.  In order to induce Fluid to enter these contracts, Heartland and EMS, through MacDonald and Rowley, assured Fluid that Oil Safe AR and Mud Safe CR were not regulated products for transport anywhere in the world and not corrosive to aluminum above a 6.25 mm/yr rate at 55 degrees Celsius.

8.      In late 2013, Fluid discovered that MacDonald and Rowley's assurances were false and that they had fraudulently misrepresented the properties of Oil Safe AR and Mud Safe CR using, among other things, falsified National Aeronautics and Space Administration (**NASA**) test data.  Because of this Fluid terminated the licensing and manufacturing agreements with Heartland on April 11, 2014.

3

9.   On May 28, 2014, Fluid filed for arbitration with the International Court of Arbitration (the **Arbitration**). Fluid has asked the arbitrators to rescind its agreements with Heartland and sought damages against Heartland, MacDonald, and Rowley for fraud. This Action is independent and unrelated to the Arbitration, which is currently proceeding in Florida

**Enviro-Syn HCR**

10.   Once Fluid became aware of Heartland's fraud and the deficiencies in Heartland's products, Fluid began to develop its own acid replacement system to service its customers with a product for which all third party data and claims could be verified. As such, by April 2014, Fluid had developed and was marketing its own product, Enviro-Syn HCR, to the oil and gas industry in Canada. This product is distinct from any Heartland product and has a patent application pending in Canada.

11.   Fluid only sells Enviro-Syn HCR in Canada and it is not used outside of Canada, but promotes Enviro-Syn internationally and intends to sell this product internationally in the future.

**Letters of July 24, 2014**

12.   In July 2014, Heartland, with the knowledge and assistance of their Alberta distributor – Mud Master – sent letters to at least ten Fluid customers, as well as to other service companies who were potential customers (the **Letters**). These Letters threatened legal action against Fluid's customers and potential customers should they continue to purchase and use Fluid products and warned them to only do business with the Defendants.

13.   MacDonald wrote these Letters misrepresenting himself as the President of Heartland and he and Heartland sent them to Fluid's customers on or around July 24, 2014. Heartland and MacDonald sent a second set of Letters to Fluid customers and potential customers on or around August 5, 2014. Rowley approved the content and sending of these Letters.

14.   On or around July 2014, Mud Master provided Heartland and MacDonald the list of potential customers that Heartland contacted on or about August 5, 2014, intended that

4

this list be used by Heartland to send the Letters to Heartland's potential customers, and knew the content of the Letters.  Heartland had knowledge of Fluid's existing customers from disclosures required by the Agreements.  However, they did not have independent knowledge of Fluid's potential customers.  Mud Master is a competitor to Fluid in Alberta, had knowledge of the potential customers and provided this list of potential customers to Heartland and MacDonald with the intention of destroying potential business for Fluid in order to secure this business for Mud Master.

15.   Mud Master had previously become involved in this dispute on June 12, 2014 when it faxed a copy of a letter to MultiChem's office in Calgary, the letter was originally from Heartland and EMS's Florida counsel to Fluid's counsel.  The letter falsely alleges that Fluid had violated the Agreements and falsely accuses Fluid of committing securities fraud, interfering with Heartland and EMS's business, and infringing on Heartland and EMS's trademarks and patents.

16.   The following Fluid customers are known to have received Letters on or around July 24, 2014:

    (a)   Progress Energy (**Progress**),

    (b)   Shell Canada Limited (**Shell**),

    (c)   MultiChem Production Chemicals (**MultiChem**),

    (d)   Calfrac Well Services (**Calfrac**).

17.   The following Fluid customers and potential customers are known to have received Letters on or around August 5, 2014:

    (a)   All Points Energy Inc. (**All Points**),

    (b)   Crescent Point Energy (**Crescent Point**),

    (c)   Trican Well Service (**Trican**),

    (d)   Centrica Energy Canada (**Centrica**),

    (e)   New Star Energy (**New Star**),

    (f)   TimberRock International (**TimberRock**),

    (g)   Canyon Technical Services (**Canyon**),

5

(h)  Haulin' Acid (**Haulin'**),

(i)  Courage Oilfield Services (**Courage**),

(j)  Canbriam Energy Inc. (**Canbriam**)

(k)  Saudi Aramco (**Aramco**), and

(l)  Todnem Chemicals (**Todnem**).

18.  The Letters sent to Fluid's customers are virtually identical.  They falsely state that Fluid is legally bound not to promote products in the oil and gas industry for two years and that Fluid is violating multiple Heartland patents by marketing its products in the oil and gas industry.  The patents at issue are United States patents under Patent Numbers 8,430,971, 8,580,047, and 8,784,573.

19.  The Letters then provide information for purchasing "original, unadulterated, patented products" from the Defendants and go on to threaten and deceive Fluid's customers by suggesting that companies purchasing Fluid products will be infringing the Defendants' patents and, as a consequence, may be subject to legal action.

**The statements in the Letters are false**

20.  First, there is no binding agreement between Fluid and the Defendants that precludes Fluid from marketing its products in the oil and gas industry for two years.  Heartland induced Fluid to enter the Agreements based on the fraudulent misrepresentations of MacDonald and Rowley.  As such, the Agreements are void *ab initio*.  Furthermore, the fact that that Heartland claims its products are unregulated, while Fluid acknowledges that its product is regulated, means that the products are not in competition.

21.  In addition, Heartland holds no Canadian patents.  As sales of Fluid's products currently occur solely in Canada and they cannot infringe on Heartland's patents, which are held exclusively in the United States.  Moreover, the composition of Fluid's products is different that Heartland's products and does not infringe on any Heartland patents.

22.  As well, the Letters falsely state that Fluid has violated its contracts with the Defendants and that Heartland cancelled its agreements with Fluid.  No such violations have occurred

6

and the cancellation of the Agreements is currently part of the ongoing Arbitration at Fluid's request.

23.    Finally, the letters also suggest that the products Fluid's customers had tested and qualified were actually Heartland products. This is also false. All products that Fluid's customers tested were Fluid's products based on Fluid's own composition and were submitted for testing after Fluid rescinded the Agreements due to Heartland's fraud.

**Defamation**

24.    In falsely stating to Fluid's customers that Fluid has violated its obligations and placed the customers in legal jeopardy, Heartland and MacDonald have defamed Fluid. In addition, the statement that the Defendants' products are "unadulterated" seeks to falsely imply that Fluid's products are deficient and, thus, again defames Fluid.

25.    The specifics of the defamation are as follows. On or about July 24, 2014, Heartland mailed the Letters, on Heartland letterhead and signed by MacDonald, to the following Fluid customers:

(a)    Progress Energy,

(b)    Shell Canada Limited,

(c)    Calfrac Well Services,

(d)    MultiChem Production Chemicals.

Fluid has received copies of these Letters, addressed to the Calgary offices of Progress, Shell, and Calfrac, and MultiChem's Houston office, from the customers themselves, showing that the customers received the Letters on or about July 24, 2014.

26.    Later, on or about August 5, 2014, Heartland mailed another series of Letters, on Heartland letterhead and signed by MacDonald, to the following Fluid customers and potential customers:

(a)    All Points Energy Inc.,

(b)    Trican Well Service,

7

    (c)       Centrica Energy Canada,

    (d)       New Star Energy,

    (e)       TimberRock International,

    (f)       Canyon Technical Services,

    (g)       Haulin' Acid,

    (h)       Courage Oilfield Services,

    (i)       Canbriam Energy Inc.

    (j)       Saudi Aramco, and

    (k)       Todnem Chemicals

These customers and potential customers of Fluid have informed Fluid that they received the letters on or about August 5, 2014. Fluid has received a copy of the Letter sent to All Points, which was addressed and received at their Calgary office on August 6, 2014.

27.     The Letters are defamatory in their natural and ordinary meaning and contain the following defamatory statements regarding Fluid and its business (copies of the Letters sent to Progress, Calfrac, Shell, MultiChem, and All Points are attached as Appendix A to this Statement of Claim):

> On July 17th 2014 for multiple causes and contractual violations, Heartland chose to cancel all license and manufacturing agreements with Fluid. A copy of the termination letter is attached for your records. Accordingly, Fluid is legally bound not to promote products for the same or similar use in the Oil and Gas industry for two (2) years from the date of termination.

> Upon information and belief, Fluid has chosen a dangerous path and is actively participating in the marketing of products in the oil & gas industry. Heartland believes Fluid is in violation of multiple patents held by Heartland and we intend to pursue Fluid to the full extent of the law.

8

It is our legal obligation to inform you that any purchase, use, re-distribution or promotion of the said product offered by Fluid would also put your company at risk of infringing on Heartland's patents through your use of the infringing products.   For you reference, Heartland is the exclusive licensee to several patents in this field, including, but not limited to U.S. Patent Nos. 8,430,971; 8,580,047; and 8,784,573.

Heartland has worked hard to maintain the highest reputation in the industry and intends on keeping reputation (sic).

If you are interested in purchasing the original, unadulterated, patented products you have tested and qualified, you may purchase the Enviro-Syn® Branded, OilSafe AR® Branded or OptiFrac Branded products in Canada from Mud Masters by calling 403-237-8900.   For the US and all other countries call Heartland Energy Group at 1-877-797-2811 and we will direct you to the nearest distributor.

28.    The statements in the Letters are understood to mean the following:

(a)    That the Plaintiff has violated Heartland's US patents;

(b)    That the Plaintiff has breached its Agreements with Heartland;

(c)    That the Plaintiff's actions are placing its customers and potential customers in legal jeopardy;

(d)    That the Plaintiff's products are not original and are adulterated,

(e)    That the products provided by the Plaintiff and tested by the third-parties were actually Heartland, not Fluid, products.

29.    The statements referred to above were false and malicious at the time they were made and remain wholly false in substance and fact and are defamatory concerning the Plaintiff.   Heartland and MacDonald's falsehoods seek to harm Fluid's reputation in the oil and gas industry here in Alberta and around the world.

9

**Inducing Breach of Contract**

30.   The Defendants have used the Letters and Mud Master's letter of June 12, 2014 (collectively the **Correspondence**) to induce Fluid's customers to breach their agreements with Fluid.  Fluid had agreements to provide Fluid products to MultiChem, Progress, Shell, Canbriam, Calfrac, New Star, and Crescent Point, among others.  The Correspondence show that the Defendants were aware of the agreements between Fluid and these customers and intentionally sought, through the Correspondence, to cause these customers to breach their agreements with Fluid.  Moreover, the Correspondence, by providing contact information for Mud Master and Heartland, clearly seek to profit from any breach.

31.   The Correspondence has caused the following breaches as of Monday, August 18, 2014:

   (a)   MultiChem has stopped ordering products from Fluid.  These orders were worth approximately $40,000 per month.

   (b)   Canbriam has discontinued use of Fluid's products until an indemnity can be granted.  This has resulted in a loss of $300,000 for present project well and the potential loss of $700,000 for the remaining project wells.

   (c)   Shell has discontinued usage pending a legal opinion on the Defendants' allegations.  This has resulted in a loss of $500,000 on present project well and a potential additional loss of at least $2 million for remaining project wells.

   (d)   Calfrac has discontinued usage pending a legal opinion on the Defendants' allegations.  This has resulted in a loss of at least $2 million on pending projects.

   (e)   New Star has discontinued usage pending a legal opinion on the Defendants' allegations.  This has resulted in a loss of $750,000 on a single pending project.

   (f)   Crescent Point has withdrawn any future consideration of Fluids products pending a legal opinion on the Defendants' allegations.  This has resulted in a loss of $2 million on a pending project and $600,000 on a pending fracturing operation with potential losses in excess of $5 million.

10

32. These are merely the contacts and breaches known to date. Even so, they already add up to almost $10 million in potential losses.

**Intentional Interference with Economic Relations**

33. Finally, the Defendants through the Correspondence unlawfully interfered with the economic relations between Fluid and its customers and potential customers by intimidation and deceit. The threat of legal action amounts to intimidation by threatening to harm the customers and potential customers on the basis of false claims and the false statements and misrepresentations constitute deceit. In tortiously interfering in this manner, they also intended to cause Fluid's customers to abandon Fluid and purchase products from the Defendants, thereby seeking to profit from their tortious acts.

34. The intentional interference of the Defendants has already caused the following damage as of Monday, August 18, 2014:

    (a) MultiChem has stopped ordering products from Fluid. These orders were worth approximately $40,000 per month.

    (b) Canbriam has discontinued use of Fluid's products until an indemnity can be granted. This has resulted in a loss of $300,000 for present project well and the potential loss of $700,000 for the remaining project wells.

    (c) Shell has discontinued usage pending a legal opinion on the Defendants' allegations. This has resulted in a loss of $500,000 on present project well and a potential additional loss of at least $2 million for remaining project wells.

    (d) Calfrac has discontinued usage pending a legal opinion on the Defendants' allegations. This has resulted in a loss of at least $2 million on pending projects.

    (e) New Star has discontinued usage pending a legal opinion on the Defendants' allegations. This has resulted in a loss of $750,000 on a single pending project.

    (f) Crescent Point has withdrawn any future consideration of Fluids products pending a legal opinion on the Defendants' allegations. This has resulted in a loss of $2

11

million on a pending project and $600,000 on a pending fracturing operation with potential losses in excess of $5 million.

35.   These are merely the intentional interferences known to date. Even so, they already add up to almost $10 million in potential losses.

**Irreparable Harm:**

36.   The Correspondence has and continues to irreparably harm Fluid's relationships with its current and potential customers. As noted above, the Correspondence has already harmed a number of Fluid's customer relationships and is creating significant difficulties in attracting new business.

37.   These false allegations have seriously tainted Fluid's reputation in the oil and gas industry and it will take significant time and effort for Fluid to repair its reputation and relationships with its customers and the oil and gas industry in general. The longer the Defendants are permitted to spread these falsehoods, the greater the damage to Fluid and the greater the difficulty in repairing the damage.

38.   The continued publishing of these Letters to Fluid's customers and potential customers in the oil and gas industry will irreparably harm Fluid by destroying its reputation and business to the point that it will be impossible to recover.

**Remedy sought:**

39.   The Plaintiff seeks:

    (a)   An interim, interlocutory, and permanent injunction restraining the Defendants from further defaming the Plaintiff or interfering with the Plaintiff's relations with its customers and potential customers.

    (b)   An Order directing the Defendants to send letters to every Fluid client and potential client they have contacted retracting the allegations made in the Letters;

12

(c)     A declaration that the Defendants intentionally interfered with economic relations between Fluid and its customers;

(d)     A declaration that the Defendants induced Fluid's customers to breach their contracts with Fluid;

(e)     A declaration that the Heartland and MacDonald have defamed Fluid;

(f)     General Damages of $10,000,000 or an amount as may be proven at trial;

(g)     Punitive Damages of $1,000,000;

(h)     Costs on a solicitor-client basis;

(i)     Such further and additional relief as this Honourable Court may deem just.

---

**NOTICE TO THE DEFENDANT:**

You only have a short time to do something to defend yourself against this claim:

    20 days if you are served in Alberta

    1 month if you are served outside Alberta but in Canada

    2 months if you are served outside Canada.

You can respond by filing a Statement of Defence or Demand for Notice in the office of the Clerk of the Court of Queen's Bench at Calgary, Alberta, AND serving your Statement of Defence or Demand for Notice on the Plaintiff's address for service.

---

**WARNING**

If you do not file and serve a Statement of Defence or a Demand for Notice within your time period, you risk losing the law suit automatically.  If you do not file, or do not serve, or are late in doing either of these things, a court may give a judgment to the Plaintiff against you.