# EXHIBIT "S"

Form 49
[Rule 13.19]

| | |
|---|---|
| COURT FILE NUMBER | 1401-09170 |
| COURT | COURT OF QUEEN'S BENCH OF ALBERTA |
| JUDICIAL CENTRE | CALGARY |
| PLAINTIFF | FLUID ENERGY GROUP |
| DEFENDANTS | JOHN MACDONALD, STEPHEN ROWLEY, HEARTLAND ENERGY GROUP LTD., ENVIRONMENTAL MANUFACTURING SOLUTIONS LLC, and MUD MASTER DRILLING FLUID SERVICES |
| DOCUMENT | AFFIDAVIT |
| ADDRESS FOR SERVICE AND CONTACT INFORMATION OF PARTY FILING THIS DOCUMENT | Burnet, Duckworth & Palmer LLP<br>2400, 525 – 8 Avenue SW<br>Calgary, Alberta T2P 1G1<br>Lawyer: James Swanson<br>Phone Number: (403) 260-5712<br>Fax Number: (403) 260-0332<br>Email Address: jswanson@bdplaw.com<br>File No. 72515.1 |

Clerk's Stamp:
CLERK OF THE COURT FILED
AUG 20 2014
CALGARY, ALBERTA

## AFFIDAVIT OF CLAY PURDY

Sworn on August 20, 2014

I, Clay Purdy, of the City of Calgary, in the Province of Alberta, SWEAR AND SAY THAT:

1. I am the Chief Executive Officer for Fluid Energy Group (**Fluid**) and as such, have personal knowledge of the matters set out in my Affidavit, except where I have stated that I have relied on the information or belief of others. Where I have relied on the information of others, I believe that information to be true.

### The relationship between the Plaintiffs and the Defendants

2. The Plaintiff, Fluid, is a company incorporated pursuant to the law of the Province of Alberta and carries on business in Alberta. Fluid is a Calgary based company that focuses on manufacturing environmentally responsible, biodegradable, and non-hazardous replacements for acids and caustics in the oil and gas industry.

3. The Defendant, Heartland Energy Group Ltd., (**Heartland**), is a company incorporated under the laws of Seychelles and carrying on business internationally. They market green chemistries to the oil and gas industry.

4. The Defendant, Environmental Manufacturing Solutions LLC (**EMS**), is a company incorporated under the laws of Florida and carrying on business internationally. They market green chemistries to the oil and gas industry, among others. Copies of corporate registration searches for EMS are attached as **Exhibit A**.

5. The Defendant, Mud Master Drilling Fluid Services, also operating as OptiFrac Chemical Services, (**Mud Master**), is a corporation incorporated in Alberta and doing business in Canada. Copies of corporate registration searches for Mud Master are attached as **Exhibit B**.

6. The Defendant, John Macdonald (**Macdonald**), is the Director of Heartland and Manager of EMS and resides in Florida.

7. The Defendant, Stephen Rowley (**Rowley**), is the President of Heartland and resides in Grain Valley, Missouri.

### The Agreements between Fluid, Heartland, and EMS

8. On November 1, 2012, Fluid entered into licensing and manufacturing agreements with Heartland (the **Agreements**) to market Oil Safe AR and Mud Safe AR in various markets, including Alberta. In order to induce Fluid to enter these agreements MacDonald, Director of Heartland and Manager of EMS, and Rowley, President of Heartland, assured Fluid that the products were non-regulated throughout the world for the purposes of domestic and international transportation and not corrosive to aluminum

above a rate of 6.25 mm/yr at 55 degrees Celsius (attached as **Exhibit C** are the most recent versions of the Agreements).

9. In late 2013, Fluid discovered that MacDonald and Rowley's assurances were false and that they had fraudulently misrepresented the properties of Oil Safe AR and Mud Safe CR using, among other things, falsified National Aeronautics and Space Administration (**NASA**) test data. Because of this Fluid sought to terminate its licensing and manufacturing agreements with Heartland on April 11, 2014 (attached as **Exhibit D** is the letter terminating the Agreements).

10. On May 28, 2014, Fluid filed for arbitration with the International Court of Arbitration (the **Arbitration**). Fluid has asked the arbitrators to rescind its agreements with Heartland and sought damages against Heartland, MacDonald, and Rowley for fraud. This Action is independent and unrelated to the Arbitration, which is currently proceeding in Florida.

**Enviro-Syn HCR**

11. When Fluid became aware of Heartland's fraud and the deficiencies in its products, Fluid developed its own acid replacement system in order to service its customers with a product for which all third party data and claims could be verified. By April 2014, Fluid had developed and was marketing its own product, Enviro-Syn HCR, to the oil and gas industry in Canada. This product is distinct from any Heartland product and has a patent application pending in Canada.

12. Fluid only sells Enviro-Syn HCR in Canada and it is not used outside of Canada. However, Fluid promotes Enviro-Syn internationally and intends to sell this product internationally in the future.

**July 24, 2014, letters.**

13. In July 2014, Heartland and EMS, with the assistance and knowledge of their Alberta distributor – Mud Master – sent letters to at least ten Fluid clients, as well as to other service companies who were potential clients (the **Letters**). These Letters threatened

legal action against Fluid's clients and potential clients should they continue to do business with Fluid and warned them to only do business with the Defendants.

14. While the Letters do not specifically reference Fluid's product: Enviro-Syn HCR, I believe that they are referring to this Fluid product, as it is the only product Fluid currently sells.

15. MacDonald wrote these Letters, misrepresenting himself as the President of Heartland, and he and Heartland sent them to four Fluid clients on or about July 21, 2014. MacDonald and Heartland sent a second set of letters to Fluid's clients and potential clients on or about August 5, 2014. I believe that Rowley approved the content and sending of these Letters.

16. I believe that Mud Master provided Heartland and MacDonald the list of potential clients that Heartland contacted on or about August 5, 2014, intended that this list be used by Heartland to send the Letters to Heartland's potential clients, and knew the content of the Letters. Heartland would have had knowledge of Fluid's existing clients from disclosures required by the Agreements. However, they would not have had independent knowledge of Fluid's potential clients. Given that Mud Master is a competitor to Fluid in Alberta, it would have had knowledge of the potential clients and I believe that they provided this list of potential clients to Heartland and MacDonald with the intention of destroying potential business for Fluid in order to secure this business for Mud Master.

17. Mud Master had previously become involved in this dispute on June 12, 2014 when it faxed a copy of a letter, originally sent by Heartland and EMS's Florida counsel to Fluid's New York counsel, to MultiChem's office in Calgary. The letter falsely alleges that Fluid had violated the Agreements and falsely accuses Fluid of committing securities fraud, interfering with Heartland and EMS's business, and infringing on Heartland and EMS's trademarks and patents. This fax is attached as **Exhibit E**.

18. Fluid has obtained copies of letters sent to and received by the following clients on or about July 21, 2014. These Letters are attached as **Exhibit F** to this Affidavit:

   (a)   Progress Energy (**Progress**),

    (b)    Shell Canada Limited (**Shell**),
    (c)    MultiChem Chemical Production (**MultiChem**), and
    (d)    Calfrac Well Services (**Calfrac**).

19. The Letters to Progress, Shell, and Calfrac are addressed to and were received at their Calgary offices. The letter to MultiChem, is addressed to MultiChem's Houston office and was received there. However, it was conveyed internally by MultiChem to its Calgary office.

20. I also have been informed and believe that the following companies also received Letters on or about August 5, 2014:

    (a)    All Points Energy Inc. (**All Points**),
    (b)    Crescent Point Energy (**Crescent Point**),
    (c)    Trican Well Service (**Trican**),
    (d)    Centrica Energy Canada (**Centrica**),
    (e)    New Star Energy (**New Star**),
    (f)    TimberRock International (**TimberRock**),
    (g)    Canyon Technical Services (**Canyon**),
    (h)    Haulin' Acid (**Haulin'**),
    (i)    Courage Oilfield Services (**Courage**),
    (j)    Canbriam Energy Inc (**Canbriam**), and
    (k)    Todnem Chemicals (**Todnem**).

21. I have been informed and believe that Crescent Point, Trican, Centrica, New Star, TimberRock, Canyon, Haulin', Courage, and Canbriam received the Letters at their Calgary offices. The Letter to Todnem was received at their international offices. The Letter to All Points is attached as **Exhibit G**.

22. The Letters that Fluid has reviewed are virtually identical. They falsely state that Fluid is legally bound not to promote products in the oil and gas industry for two years and that Fluid is violating multiple Heartland patents by marketing its products in the oil and gas industry. The patents at issue are United States patents under Patent Numbers 8,430,971, 8,580,047, and 8,784,573.

23. The Letters then provide information for purchasing "original, unadulterated, patented products" from the Defendants and go on to threaten and deceive Fluid's Clients by

Case 6:14-cv-01702-PGB-KRS   Document 2-20   Filed 10/20/14   Page 7 of 10 PageID 628

6

suggesting that companies purchasing Fluid products will be infringing the Defendants' patents and, as a consequence, may be subject to legal action.

**The statements in the Letters are false.**

24. First, there are no binding agreements between Fluid and the Defendants that preclude Fluid from marketing its products in the oil and gas industry for two years. While Clause 22 of the License Agreement contains a two-year non-competition clause, the Heartland, EMS, MacDonald, and Rowley induced Fluid to enter this Agreement based on the fraudulent misrepresentations of MacDonald and Rowley. Moreover, the non-competition clause is not triggered by a breach of the Agreement by the licensor, which is what has occurred here.

25. In addition, sales of Fluid's products currently occur solely in Canada and, therefore, do not violate any US patents. Moreover, the composition of Fluid's products does not infringe any Heartland patents and the Defendants have brought no legal proceedings alleging patent infringement in the United States or Canada. Neither Heartland nor MacDonald hold any Canadian patents (attached as **Exhibit H** are copies of a patent search done by Fluid's counsel).

26. As well, the Letters falsely state that Fluid has violated its contracts with the Defendants and that Heartland cancelled its agreements with Fluid. No such violations have occurred and the cancellation of the Agreements is currently part of the ongoing Arbitration at the request of Fluid.

27. Finally, the letters also suggest that the products Fluid's clients had tested and qualified were actually Heartland products. This is also false. All products that Fluid's customers tested were Fluid's products based on Fluid's own composition and submitted for testing after Fluid rescinded the Agreements due to Heartland's fraud.

**The Letters are causing irreparable harm to Fluid**

28. The Letters are irreparably damaging Fluid's relationships with its current and potential customers. The Letters have already caused Fluid to lose at least two customers

collectively worth over $2 million and the threat of liability and the false accusations of inferior products are creating significant difficulties for Fluid in attracting new business.

29. The Letters have caused the following as of Monday, August 18, 2014:

   (a) MultiChem has stopped ordering products from Fluid. These orders were worth approximately $40,000 per month.

   (b) Canbriam has discontinued use of Fluid's products until an indemnity can be granted. This has caused a loss of $300,000 for present project wells and the potential loss of $700,000 for the remaining project wells.

   (c) Shell has discontinued usage pending a legal opinion on the Defendants' allegations. This has caused a loss of $500,000 on present project wells and a potential additional loss of at least $2 million for remaining project wells.

   (d) Calfrac has discontinued usage pending a legal opinion on the Defendants' allegations. This has caused a loss of at least $2 million on pending projects.

   (e) New Star has discontinued usage pending a legal opinion on the Defendants' allegations. This has caused a loss of $750,000 on a single pending project.

   (f) Crescent Point has withdrawn any future consideration of Fluid's products pending a legal opinion on the Defendants' allegations. This has caused a loss of $2 million on a pending project and $600,000 on a pending fracturing operation with potential losses in excess of $5 million.

30. These are merely the contacts we know about and the discontinuations to date. Even so, they already add up to almost $10 million in potential losses.

**The Defendants will continue to spread falsehoods among Fluid's customers.**

31. I believe that, without an injunction, the Defendants will continue to send out such Letters to companies in the oil and gas industry in an effort to destroy Fluid's business.

32. These false allegations have seriously tainted Fluid's reputation in the oil and gas industry and it will take significant time and effort for Fluid to repair its reputation and relationships with its clients and the oil and gas industry in general. The longer the Defendants are permitted to spread these falsehoods, the greater the damage to Fluid and the greater the difficulty in repairing the damage.

33. The continued publishing of these Letters to Fluid's clients and potential clients in the oil and gas industry will destroy Fluid's reputation and business to the point that it will be impossible to recover.

**The Action has a real and substantial connection to Alberta**

34. I am advised by counsel and believe that the Action has a real and substantial connection to Alberta because:

    (a) The torts of defamation, inducing breach of contract, and intentional interference with economic relations were committed in Alberta;

    (b) The Plaintiff is located in Alberta;

    (c) The Defendant, Mud Master, is located in Alberta;

    (d) The Plaintiff has suffered damages in Alberta.

35. I am advised by counsel that the Defendants Heartland and EMS will be served by registered mail to their head offices in the United States. Rowley and MacDonald will by registered mail to their home addresses.

SWORN BEFORE ME at the City of )
Calgary, in the Province of Alberta this 20th )
day of August, 2014. )
)

9

_____  _____
A Commissioner for Oaths in and for the  ) CLAY PURDY
Province of Alberta
**HARVEY JAMES BERGER**
Barrister & Solicitor